# Commonwealth v. Ortho-McNeil-Janssen Pharmaceuticals Inc.

*William D. Marvin* and *Michael Coren,* for Commonwealth.

*Edward M. Poser, Gregg W. Machuse, Melissa A. Graff, Kenneth Murphy* and *Joanne C. Lewers,* for defendant.

MASSIAH-JACKSON, *J.,* June 25, 2010—

## I. PROCEDURAL HISTORY

In February, 2007, the Commonwealth of Pennsylvania commenced litigation against three pharmaceutical companies: Eli Lilly & Company Inc., Ortho-McNeil-Janssen Pharmaceuticals Inc. (Janssen), and AstraZeneca Pharmaceuticals L.P. The Commonwealth claimed it was seeking to recover, inter alia, expenses incurred for reimbursing pharmacies for the purchase of Risperdal and other antipsychotic drugs manufactured by these defendants. At that time, the plaintiff alleged that the defendant pharmaceutical companies promoted their respective antipsychotic drugs for non-medically ac-

cepted and non-medically necessary uses. The Commonwealth also asserted that the defendants misrepresented the risks associated with these medicines.

The defendants filed preliminary objections seeking to sever the actions and to drop misjoined parties. In December, 2007, the court severed the claims filed by the Commonwealth, and directed the plaintiff to file separate complaints against each of the defendants.

This action was filed against Janssen on January 17, 2008, alleging in Count I — false and fraudulent claims under medicaid program; Count II — false and fraudulent claims under PACE program; Count III — negligence; Count IV — fraud and misrepresentation; Count V — misrepresentation under Restatement (Second) of Torts §402B: and, Count VI — unjust enrichment. On January 5, 2010, Honorable Howland W. Abramson granted in part Janssen's motion for judgment on the pleadings, per Rule 1034, and dismissed Counts I — III and V of the complaint.

On April 12, 2010, Janssen filed a motion for summary judgment urging dismissal of Counts IV and Count VI of the complaint.

On April 13, 2010, the Commonwealth filed a motion for leave to file an amended complaint, which was granted by the court. The Commonwealth's first amended complaint was filed on May 17, 2010, asserting Count I — fraud and misrepresentation, and, Count II — unjust enrichment. Janssen filed preliminary objections to the first amended complaint on May 24, 2010.

In anticipation of jury selection on May 28, 2010, and after reviewing the evolution of the litigation, this court,

on May 25, 2010, requested each party to submit a precise statement of claims and defenses. On May 27, 2010, counsel and the court participated in a pre-trial telephone conference to discuss trial logistics. Jury selection took place on May 28, June 1, and June 3.

On June 2, 2010, this court convened a day of hearings for oral argument to consider the defendant's motion for summary judgment on the initial complaint, preliminary objections to the first amended complaint, and multiple motions in limine filed by both parties.

After opening statements on June 3, 2010, and for the next week, we heard from the Commonwealth witnesses. The Commonwealth rested on June 10, 2010. By June 10, 2010, the revised claim from plaintiff was further narrowed, and was limited to Medicaid damages only, in the amount of $148,800,000.

Following Janssen's oral motion for compulsory nonsuit on June 10, 2010, written memoranda were submitted by the parties on June 11.

On June 14, 2010, a hearing was convened by the court to consider the nonsuit motions. The transcript of that hearing is incorporated in this memorandum as if fully set forth herein. Following oral argument, this court provided a preliminary outline to the parties and explained the basis for the order, dated June 14, 2010, which granted the motion for nonsuit.

For the reasons which follow, the motion of Ortho-McNeil-Janssen Pharmaceuticals Inc. for compulsory nonsuit, pursuant to Rule 230.1 of the Pennsylvania Rules of Civil Procedure, to Count I and Count II of the first amended complaint, was granted on June 14, 2010.

## II. LEGAL DISCUSSION

The entry of nonsuit is proper when a plaintiff has failed to introduce sufficient evidence to establish the necessary elements to sustain the action. It is the duty of the trial court to make a determination prior to submission of the case to a jury. In making this determination, the plaintiff must be given the benefit of all facts and all reasonable inferences arising from the evidence. The lack of evidence must be clear and all conflicts in evidence must be resolved in plaintiff's favor. See generally, *American States Insurance Co. v. Maryland Casualty Co.,* 427 Pa. Super. 170, 628 A.2d 880 (1993); *Reimer v. Tien,* 356 Pa. Super. 192, 514 A.2d 566 (1986).

The Pennsylvania Supreme Court affirmed the judgment of nonsuit in *Flagiello v. Crilly,* 409 Pa. 389, 187 A.2d 289 (1963), and held that a party who bears the burden of proof may not rest on guess or speculation. The Supreme Court wrote at 409 Pa. 390, 187 A.2d 290:

"In *Smith v. Bell Telephone Co.,* 397 Pa. [134, 153 A.2d 477 (1959)], the court said (pages 138, 139): 'We have said many times that the jury may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must he evidence upon which logically its conclusion may be based.' *Schofield v. King,* 388 Pa. 132, 136, 130 A.2d 93 (1957); *Connor v. Hawk,* 387 Pa. 480, 482, 128 A.2d 566 (1957); *Ebersole v. Beistline,* 368 Pa. 12, 16, 82 A.2d 11 (1951).

"when a party who has the burden of proof relies upon circumstantial evidence and inferences reasonably deducible therefrom, such evidence, in order to prevail,

must be adequate to establish the conclusion sought and must so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith."

In the case at bar, this plaintiff-Commonwealth asserts that it has met its burden of proof' for fraudulent misrepresentation by claiming it is entitled to a presumption of reliance and causation, and, that circumstantial evidence supports an inference that the defendant's marketing programs were carried out, and, that it is exempt from Pennsylvania's Learned Intermediary Doctrine. This trial court concluded that the jury should not be asked to speculate in order to reach its verdict.

The Commonwealth claimed that Janssen made false representations about its prescription antipsychotic drug, Risperdal. According to the plaintiff, Janssen fraudulently represented that Risperdal was superior (safer and more effective) than both conventional antipsychotic drugs (first generation, FGA), as well as newer antipsychotic drugs (second generation, SGA or atypical). Further, the plaintiff asserted that from 2005-2007, "Janssen never shared any information with the Commonwealth," about the FDA's determination relating to Risperdal, even though Janssen representatives testified at the annual Pharmacy and Therapeutic Committee (P&T) meetings for Pennsylvania Medicaid. Plaintiff's memorandum in opposition to nonsuit. June 11, 2010, p. 5. (The Commonwealth did not present the transcripts of those public hearings.)

In *Scaife Company v. Rockwell-Standard Corporation,* 446 Pa. 280, 285 A.2d 451 (1971), the Supreme Court

summarized the elements of fraudulent misrepresentation at 446 Pa. 285, 285 A.2d 454:

"Summarizing the essential elements of this cause of action, Mr. Justice (later Chief Justice) Jones in *Neuman v. Corn Exchange National Bank and Trust Co.,* 356 Pa. 442, 450, 51 A.2d 759, 763 (1947), stated, 'there must be (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result.' *Accord, Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A.2d 465 (1964); *Savitz v. Weinstein,* 395 Pa. 173, 149 A.2d 110 (1959). Concerning the proof of fraud, our cases have consistently enunciated a very high standard. *E.g., Yoo Hoo Bottling Co. Inc. v. Leibowitz,* 432 Pa. 117, 247 A.2d 469 (1968) ('clear, precise and convincing'); *Gerfin v. Colonial Smelting and Refining Co. Inc.,* 374 Pa. 66, 97 A.2d 71 (1953) ('clear, precise and indubitable'); *New York Life Insurance Co. v. Brandwene,* 316 Pa. 218, 172 A. 669 (1934) ('clear and satisfactory')."

See also, Restatement (Second) of Torts, §525, 551. The plaintiff-Commonwealth asserts that it has presented clear, precise and convincing evidence to establish a legal basis for proof of fraud. This court does not agree.

The plaintiff-Commonwealth alleged that as a result of Janssen's fraudulent misrepresentations or nondisclosures, it suffered a monetary loss "calculated as the difference between what the Commonwealth paid for Risperdal and the actual, real or intrinsic value of the therapeutically equivalent Haloperidol." Plaintiff's

memorandum in opposition to nonsuit, June 11, 2010, pp. 7-8. According to plaintiff it has presented clear, precise and convincing evidence to establish losses through the Medicaid program in the amount of $148,833,675 for the period of 1994 through the first half of 2008. This court does not agree.

### A. *The Linchpin of Common Law Fraud Is Proof of Plaintiff's Justifiable Reliance on a Defendant's Misrepresentation or Nondisclosure*

One of the essential elements for fraud is reliance. It is a fundamental principle of the law of fraud, regardless of the form of relief sought, that in order to secure redress, the plaintiff must have relied upon the statement or representation as an inducement to his action or injurious change of position. "The recipient of a fraudulent misrepresentation can recover against its maker . . . if, but only if, (a) he relies on the misrepresentation in acting or refraining from action, and (b) his reliance is justifiable." Restatement (Second) of Torts §537 (1977). See, *Scaife Co. v. Rockwell-Standard Corporation,* 446 Pa. 280, 288, 285 A.2d 451, 455-56 (1971); *Emory v. Third National Bank of Pittsburgh,* 308 Pa. 504, 162 A. 281, 283 (1932); *Delahanty v. First Pennsylvania Bank,* 318 Pa. Super. 90, N.A. 464 A.2d 1243 (1983); *National Building Leasing Inc. v. Byler,* 252 Pa. Super. 370, 376, 381 A.2d 963, 966 (1997); 37 Am.Jur.2d at §§223, 236.

### 1. The Commonwealth and Janssen Are Sophisticated Business Entities

During trial and for the first time since 2007, the Commonwealth advised Janssen and the court that the parties

had a "confidential" relationship. Plaintiff claimed it was entitled to a presumption of reliance and it need not affirmatively prove justifiable reliance. In plaintiff's memorandum in opposition to nonsuit, June 11, 2010, at p. 7:

"Additionally, information shared by drug manufacturers with the Commonwealth and relied upon by it for the determination of the amount of rebate it is owed — the "unit rebate amount" — is confidential and may not be disclosed to anyone else. (*Id.* at 27, 56-57 (confidentiality) (exhibit P).) Thus, a 'special', 'confidential,' and/or 'fiduciary' relationship exists between drug manufacturers like Janssen and the Commonwealth that establishes a presumption of reliance by the Commonwealth in its dealings with Janssen and other pharmaceutical companies. See *e.g., Basile v. H.R. Block Inc.,* 729 A.2d 574, 582 (Pa. Super. 1999); *Katlin v. Tremoglie,* 43 D.&C.4th 373, 392 (Phila. Cty. 1999); see also, *Affiliated Ute Citizens v. United States,* 406 U.S. 128 153-54 (1972) (dispensing with requirement of positive proof of reliance, where a duty to disclose material information had been breached, concluding that the necessary nexus between the plaintiffs' injury and the defendant's wrongful conduct had been established). Finally, under Pennsylvania law, the simple fact of the misrepresentations themselves (see ¶3, *supra*) supports a presumption of reliance."

At oral argument on June 14, 2010, N.T. 37, the Commonwealth further explained that its presumption of reliance argument was grounded on Dr. Cathers' testimony relating to the confidential "unit rebate amount." Initially, it must be noted that confidentiality of manu-

facturers' propriety and financial materials is statutorily mandated by both the federal and state entitlement legislation. See 42 U.S.C. §1396r-8(b)(3)(D); 72 P.S.C. §3761-704(3).

Generally, a "special", "confidential" and/or "fiduciary" relationship may be found when the parties are not equal. The cases relied on by the Commonwealth do not support its position that it maintained a confidential or fiduciary relationship with Janssen. See plaintiffs memorandum in opposition to nonsuit, June 11, 2010, p. 7:

• In *Basile v. H & R Block Inc.*, 729 A.2d 574 (Pa. Super. 1999), the Appellate Court determined that a principal-agent relationship existed between the taxpayers and the accounting firm in a class action. Accordingly, a fiduciary relationship was confirmed and reliance by the class plaintiffs was implicit and established by operation of law.

• In *Katlin v. Tremoglie*, 43 D.&.C.4th 373 (Phila. Cty. 1999), the court held that the parties were in a doctor-patient relationship. For purposes of class certification, there was a special relationship, that is, a fiduciary relationship where reliance is presumed and a causal connection between the deception and economic loss was ascertainable.

• *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972), involved an interpretation of Rule 10b-5 of the Securities Exchange Act, where the Supreme court held that reliance and causation were established without positive proof in order to achieve a high standard of business ethics in the securities industry.

• In *Zwiercan v. General Motors Corporation,* 58 D.&.C.4th 251 (2002), the court noted that when a purchaser of an automobile is unsophisticated, then reliance can he presumed. See also, *Drayton v. Pilgrim's Pride Corporation,* 2004 U.S. Dist. Lexis 6691 (E.D. Pa. 2004), a case brought pursuant to the Pennsylvania Uniform Trade Practices and Consumer Protection Law which relied on *Zwiercan, supra,* to find that reliance can be presumed for an unsophisticated consumer of adulterated food.

The Commonwealth has not addressed, either in writing or at oral argument, the significant distinguishing factors in this case, that is, the parties here are independent, sophisticated business and government entities entrusted with equal knowledge of the complicated federal and state legislative mandates. Neither party exemplifies a dominance or dependence or weakness. See *Frowen v. Blank,* 493 Pa. 137, 425 A.2d 412 (1981); Janssen memorandum in support of nonsuit, June 11, 2010, pp. 26-27, and cases cited therein. This court concludes that the Commonwealth has failed to establish that it has a "fiduciary" or "special" or "confidential" relationship with Janssen. The Commonwealth is not entitled to a presumption of reliance on this basis.

### 2. The Commonwealth's Fraud on the Market Theory of Recovery Has Been Rejected By Pennsylvania Courts

In an earlier theory that reliance should be presumed, the Commonwealth suggested that its fiscal injuries came about by reliance on Janssen's inflated pricing of Risperdal — which artificially increased everyone's price.

In its response in opposition to the motion for summary judgment to the original complaint, the Commonwealth stated at p. 28, that the *In re Zyprexa* third-party payor decision supports the Commonwealth's fraud and misrepresentation claims, noting that, "the third-party payors were not required to present individualized proof of causation because they, 'were directly injured . . . when each was overcharged a fixed computable amount for each prescription.'" 253 F.R.D. 69, 195 (2008); 671 F. Supp.2d 397 (E.D.N.Y. 2009).

Similarly, in its May 28, 2010, precise statement of claims, the Commonwealth stated that as a compelled purchaser of Risperdal, it relied on Janssen for accurate pricing information. The plaintiff stated that Janssen's false representations caused an artificial increase of everyone's Risperdal price, citing, *e.g. Clark v. Pfizer Inc.,* 990 A.2d 17 (Pa. Super. 2010).

The Commonwealth was actually asserting that reliance should be presumed because Janssen created a fraud on the market. The Honorable Superior Court recently stated at 990 A.2d 17, 25, n.4:

"The fraud on the market theory is a judicially created presumption typically employed by plaintiffs in securities class actions to prove the reliance elements of section 10(b) and Rule 10b-5 . . . under the Securities Exchange Act of 1934 . . . . In such a case, a plaintiff is presumed to have relied on material information disseminated to the public due to market efficiency and the notion that the price of the security simultaneously reflects the incorrect information as it is made public; thus, because traders in a public market rely on the market price and the integrity of the market, the traders have ispo facto relied on the misinformation because they would have traded

at another price, or not at all, had the truth been known .... Borrowing, implicitly or explicitly, from the fraud on the market theory, courts have permitted plaintiffs to use aggregate, statistical proof to establish class-wide causation in consumer fraud cases alleging artificial price inflation .... In these cases, 'every member of the putative classes was necessarily injured because defendants' alleged fraudulent marketing caused an increase in a product's price, meaning everyone who purchased the product paid too much ....' Consequently, the plaintiffs were automatically subjected to a single source of harm, *i.e.,* the effect of the defendant's conduct on the purchase price, and could recover economic damages arising from the fraudulently-inflated price." (citations omitted)

In *Clark v. Pfizer Inc., supra,* the Superior court rejected the theory of fraud on the market where plaintiffs' theory of liability was based on defendant's making an affirmative misrepresentation in actively promoting a drug that allegedly had no beneficial effects/purposes aside from its FDA-approved uses. There, the application of the fraud on the market theory was rejected when the defendants produced evidence that doctors in Pennsylvania prescribed off-label use of Neurontin to class members for reasons wholly unrelated to defendants' alleged fraudulent marketing. The Superior court held that in order to establish reliance/causation, plaintiffs would have to demonstrate doctor-by-doctor that the defendant's fraudulent misrepresentations or omissions during the off-label promotion caused the doctor to prescribe the medicine.

In, *In re Zyprexa Products Liability Litigation,* 253 F.R.D. at 201, the court allowed the presumption of reli-

ance and causation where, unlike here, the evidence demonstrated that the market for the drugs was responsive to the information about safety and efficacy that was allegedly misstated or suppressed by the drug company. The court explained the presumption as follows:

"The economic analysis undertaken in the instant case contains the features of reliability lacking in [*McLaughlin v. American Tobacco,* 522 F.3d 215 (2nd Cir. 2008)]. For example in *McLaughlin* there was a 'lack of appreciable drop in the demand . . . of light cigarettes after the truth about lights was revealed . . . .' Here, however, there is a remarkable decline in the demand for *Zyprexa* after only some of the truth was revealed, despite Lilly's attempt to ameliorate its effects."

That court determined that the fact that the Zyprexa market was responsive in terms of numbers of sales to adverse information suggested that the Zyprexa's price may have been inflated, thus supporting a presumption of reliance. There has been no such evidence in this litigation. See Janssen's memorandum in support of nonsuit, June 11. 2010, pp. 24-28.

Here, as in *In re Neurontin Marketing, Sales Practices and Products Liability Litigation,* 618 F. Supp.2d 96 (D. Mass. 2009), the plaintiff was attempting to "salvage" its fraudulent misrepresentation claims. The Massachusetts court commented on the differences between the prescription drug industry and the securities industry, and concluded the two are "too dissimilar" to permit a rebuttable presumption of reliance. See also, *Prohias v. Pfizer Inc.,* 485 F. Supp.2d 1329 (S.D. Fla. 2007), which itself cited *Heindel v. Pfizer Inc.,* 381 F. Supp.2d 364, 380 (D. N.J. 2004), holding that the "price inflation" or

"fraud on the market" theories are too speculative in the pharmaceutical drug industry.

In, *In re Neurontin,* at 618 F. Supp.2d 111-12, the court stated:

"no court has ever adopted a 'fraud on the market' type theory outside the securities fraud context, and the majority of courts which have had occasion to extend the theory to common law fraud have expressly declined to do so." (numerous citations omitted)

See also, *In re Rezulin Products Liability Litigation,* (MDL no. 1348), 524 F. Supp.2d 436 (S.D.N.Y. 2007).

To the extent that the Commonwealth may continue to seek a presumption of reliance based on its price inflation/fraud on the market theory, it failed to present economic analysis, aggregate statistical proof, or any other expert evidence. This court concludes that the Commonwealth was not entitled to a presumption of reliance and causation on this basis.

### 3. There Was No Evidence Presented That the Commonwealth Relied on a Misrepresentation or Nondisclosure from Janssen

In Janssen's memorandum in support of nonsuit, June 11, 2010, p. 19, it states:

"Thus, the Commonwealth was not a helpless purchaser of prescription drugs. It had multiple committees, which had the assistance of unbiased outside consultants, making independent determinations regarding access to prescription drugs for Medicaid and PACE participants. The absence of any reliance on any alleged misstatements by Janssen could not be more clear."

See also, *Moore v. Steinman Hardware Co.,* 319 Pa. 430, 179 A. 565 (1935) where business parties deal at arm's length, the bargaining transactions are not entitled to special circumstances.

The Commonwealth did not present any evidence of justifiable reliance or causation in this litigation, rather it rested on its position that a "special" or "confidential" and/or "fiduciary" relationship exists between drug manufacturers like Janssen and the Commonwealth. See memorandum in opposition to nonsuit, June 11, 2010, pp. 6-7. The party claiming a confidential relationship bears the burden to establish proof of the existence of such a relationship. See *In re Trosylol Products Liability Litigation,* 2009 WL 577726 (S.D. Fla.). The Commonwealth did not meet its burden of proof in its case in chief.

### B. *The Learned Intermediary Doctrine Is The Law in Pennsylvania*

The Commonwealth failed to present any evidence that in the absence of Janssen's purported fraudulent misrepresentations or nondisclosures, any physicians in Pennsylvania would have changed his or her prescription habits.

In *Demmler v. SmithKline Beecham Corporation,* 448 Pa. Super. 425, 671 A.2d 1151 (1996), the Superior Court upheld summary judgment, finding that where a drug is available only by prescription, the adequacy of the warning is not to the public or the patient, but to the prescribing doctor. It is a prescribing physician who considers the unique set of symptoms and tolerances of his or her patient. The *Demmler* court stated at 671 A.2d at 1154:

" 'Where the drug is available only upon prescription of a duly licensed physician, the warning required is not to the general public or to the patient, but to the prescribing doctor.' *Dion v. Graduate Hospital of University of Pennsylvania,* 360 Pa. Super. 416, 422, 520 A.2d 876, 879 (1987), quoting *Incollingo v. Ewing,* [444 Pa. 263] at 288, 282 A.2d [206] at 220 [1971]. See also, *Hahn v. Richter,* [427 Pa. Super. 130] at 142, 628 A.2d [860] at 866 [1994]. 'As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities of his patient. His is the task of weighing the benefits of any medication against its potential dangers. The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative.' *Windham v. Wyeth Laboratories,* 786 F. Supp. 607, 611 (S.D. Miss. 1992), quoting *Reyes v. Wyeth Laboratories,* 498 F.2d 1264, 1276 (5th Cir.), *cert. denied,* 419 U.S. 1096, 95 S. Ct. 687, 42 L.Ed.2d 688 (1974). See also, *Hahn v. Richter, supra; Mazur v. Merck & Co., Inc.,* 742 F. Supp. 239, 252 (E.D. Pa. 1990). Generally, expert medical testimony is required to determine whether the drug manufacturer's warning to the medical community is adequate because prescription drugs are likely to be complex medicines, esoteric in formula and varied in effect. *Dion v. Graduate Hospital of University of Pennsylvania,* 360 Pa. Super. at 425-26, 520 A.2d at 881. See generally, *Hamil v. Bashline,* 481 Pa. 256, 267, 392 A.2d 1280, 1285 (1978)."

The Superior Court in *White v. Weiner,* 386 Pa. Super. 111, 125, 562 A.2d 378, 385-86 (1989) noted that it is the duty of the physician to be fully aware of the characteristics of the drug, the therapeutic dosage, other medications taken by the patient, and side affects associ-

ated with the drug, citing *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971); *Makripodis v. Merrell-Dow Pharmaceuticals Inc.,* 361 Pa. Super. 589, 523 A.2d 374 (1987); *Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807 (1984); *Leibowitz v. Ortho Pharmaceutical Corporation,* 224 Pa. Super. 418, 307 A.2d 449 (1973). See also, *Taurino v. Ellen,* 397 Pa. Super. 50, 579 A.2d 925 (1990). The plaintiff-Commonwealth's theory is that it is exempt from the Learned Intermediary Doctrine because it is challenging Risperdal pricing based on Janssen's alleged misrepresentations or nondisclosures, and not based on warnings given or not given to medical providers. As noted, however, the Risperdal market share is dependent on physician prescriptions. See hearing, June 14, 2010, N.T. 50, 1. 12-19.

The plaintiff-Commonwealth cannot escape the necessity of proof needed to establish a nexus between the allegations of fraudulent misrepresentations or nondisclosure of the drug's efficacy and safety and the economic injury it claims. Absent proof that if the defendant manufacturer had issued the proper warning or a different warning then the prescribing physicians would change his or her prescription habits, thus causing a different and lower price, this plaintiff cannot meet its burden and the case cannot go forward to a jury. *Coyle v. Richardson-Merrell Inc.,* 526 Pa. 208, 584 A.2d 1383 (1991).

C. *The Internal Causal Nexus Quanday*

On June 14, 2010, N.T. 67, 1. 7-23, this court stated:

"And then finally just a comment about causation, which I had another concern about the causal nexus, . . . there was no showing that if either the 1993 letter or any

of the internal Janssen marketing materials had been provided to the Drug Utilization Committee or the Pharmacy and Therapeutic Committee or any other Medicaid or PACE committees, that there would have been any actions taken that were different. There was no record of whether any recommendations which those committees might have made or could have made or would have made would have been accepted or rejected. There was no evidence of what would have caused a different course of conduct by either DPW, Department of Aging or Medicaid or the PACE departments, so that's an internal causal nexus concern that I have about this whole causation business."

It has been said that in Pennsylvania, causation has two separate components: (1) causation in fact and (2) proximate causation. *Markovich v. Bell Helicopter Textron Inc.,* 805 F. Supp. 1231, 1238 (E.D. Pa. 1992) citing, *Robertson v. Allied Signal Inc.,* 914 F.2d 360, 366 (3d Cir. 1990). Causation in fact or "but for" causation "requires proof that the harmful result would not have come about but for the conduct of the defendant." The causal requisite applies with equal force to claims grounded in fraud and misrepresentation.

Fraud must be proven by clear, precise and convincing evidence. See generally, *Delahanty v. First Pennsylvania Bank N.A.,* 318 Pa. Super. 90, 464 A.2d 1243 (1983). The essential elements of the tort are misleading information, justifiable reliance, causation and pecuniary loss. Assuming arguendo Janssen conveyed misleading information:

• The trial record is inadequate to establish the fact or circumstances of plaintiff's reliance on Janssen.

• The trial record is inadequate to establish causation, that is, had Janssen made different warnings that any physician would have prescribed differently.

• The trial record is inadequate to establish that prior to 2004 any Medicaid-related department, clinician or committee within the Commonwealth would have taken any action that would have resulted in fewer prescriptions or purchases of Risperdal. which in turn would have reduced the market share and price.

• Between 2005 and the first half of 2008, the record is clear that notwithstanding public knowledge of the CATIE study, public knowledge of the Diabetes Consensus Statement, and public and private meetings held at all levels of state government, no action was taken by the plaintiff-Commonwealth which resulted in fewer prescriptions or purchases of Risperdal.

### D. *The Magnitude and Complexity of This Case Is Beyond the Experience and Understanding of an Average Juror*

Pennsylvania law is well-settled that the purpose of expert testimony is to assist the jury to understand complex issues beyond the knowledge, intelligence and experience of the ordinary layperson.

Rule 702 of the Pennsylvania Rules of Evidence states:

"If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise."

Expert testimony is routinely heard with regard to financial, economic and regulatory issues. For example, such experts provide relevant, admissible and helpful testimony for both plaintiffs and defendants to opine about earning capacity, future earnings potential and productivity, business evaluations, property assessments. regulations relating to OSHA, ANSI and, of course, much more.

Prior to trial the Commonwealth suggested that "basic arithmetic" is all that this trial jury would need in order to understand and calculate Pennsylvania's medical assistance programs. This court concludes that while many numbers were quickly flashed on a power point screen, the damage computations in multiple millions of dollars were not adequately explained or presented to the jury in a manner to enable these ordinary lay persons to understand the underlying data.

In its pretrial motion in limine (control no. 10051393), Janssen objected at page 9:

"In the present case, at virtually the last possible moment before trial, the Commonwealth states that it intends to seek in excess of *$160,000,000* based on: (1) a claim which is absent from its complaint; and (2) a claim set forth in a *two-sentence description* in its pretrial memorandum, without any factual support. Having failed to provide any information in support of its new damage theory, the Commonwealth should be precluded from offering any evidence at the time of trial. *Busy Bee Inc.,* 2006 WL 723487, *46-47." (footnote omitted)

This trial court denied Janssen's motion to preclude evidence of damages, by order dated June 3, 2010.

The failure of the Commonwealth to clearly identify and articulate its damage calculation prior to trial served to confuse the jury as early as opening statements when they saw, a power point presentation and they were told by counsel that the Commonwealth was seeking $289,000,000. One week later they heard Dr. Terri Cathers testify that Janssen owes the Commonwealth $148,800,000.

The purpose of an expert report is to assist the triers of fact. The jury is entitled to understand the facts and the data upon which the damage calculations were based — this includes an understandable presentation and explanation of the words, terms and processes involved in economic and financial conclusions. See Rules 702, 703, 705 of the Pennsylvania Rules of Evidence; Bernstein, 2010 Pa. Rules of Evidence (Gann): Packel and Poulin, Pennsylvania Evidence, third ed., (West 2007).

While the Commonwealth's printouts of computer stored information were not challenged for authenticity in this litigation, there was no foundation testimony presented to permit the lay jurors to comprehend the genesis of the damage numbers — initially, a quarter of a billion dollars. See Bernstein Rule 702[8]; Packel and Poulin, §727. Generally, business-related damages may be more readily susceptible to proof with quality expert reports and expert evidence, as well as economic and financial data relating to the various statutory algorithms.

This court denied defendant-Janssen's motion in limine (control no. 10051393) in order to provide the Com-

monwealth an opportunity to prove the damage portion of its case. Under the circumstances presented here, it would have been error for this trial court to permit the jury to engage in conjecture.

### E. *The Magnitude and Complexity of This Case Required that the Defendant Be Provided With an Accurate Written Expert Report of Damages Claimed Prior to Trial*

By letter dated January 8, 2010, the plaintiff-Commonwealth advised Janssen of the damages it was seeking in this lawsuit:

"the difference between the cost of all Risperdal prescriptions and the cost of a cheaper, safer, generic alternative."

In the first amended complaint filed on May 17, 2010, plaintiff-Commonwealth described its damage claim in its wherefore statement:

"for excessive expenditures made for Risperdal prescriptions over the value that the Commonwealth would have paid for Risperdal had the drug's true safety and efficacy profile been disclosed . . . ."

The Commonwealth opposed Janssen's motion in limine to preclude evidence of damages based on the difference in price between Risperdal and other medicines, (control no. 10051393), and stated the recovery it was seeking at page 7:

"recovery for the price differential between Risperdal and a comparable, cheaper, but equally (or more) safe and effective generic clinical equivalent."

On May 28, 2010, the Commonwealth described the precise nature of the damages it was seeking as follows:

"Commonwealth seeks damages of at least $150,000,000 for the difference in price between Risperdal prescriptions paid or reimbursed by the Commonwealth and the cost of a cheaper generic clinical equivalent."

On June 3, 2010, the Commonwealth told the jury, Janssen and this court of new damage calculations at N.T. 58:

"Again, we spent $568,000,000 on Risperdal. The evidence will show that the Commonwealth was overcharged a total of $289,000,000. So by the end of the trial, you'll understand why the evidence will force me to ask you for a verdict of $289,000,000."

In its June 11, 2010, memorandum in opposition to nonsuit, the Commonwealth stated:

"The Commonwealth's evidence is sufficient to establish that it suffered losses through its Medicaid program in the amount of $148,833,675, which represents the difference between the amount paid for Risperdal and the actual, real, or intrinsic value of the therapeutically equivalent Haloperidol."

Throughout the trial, the transcript revealed a patchwork of changing damage claims from this plaintiff. Compare June 4, 2010, p.m. session, N.T. 101-106, with June 8, 2010, a.m. session, N.T. 104-12.

Of significant note is that the Commonwealth's failure to present a qualified economic or financial expert caused it to forego its claim for $20,000,000 for PACE dam-

ages when the fact witness became "confused". June 10, 2010, a.m. session, N.T. 61.

Finally, it is not clear to this court that there was evidence or proof that, "the cost of a cheaper generic clinical equivalent" is the same measure of damages as the "intrinsic value of the therapeutically equivalent Haloperidol". Thus, not only did the time period of damages fluctuate through the pretrial and trial, and the calculations of the amount of the damage claim change, but the nature of the damage claim evolved — to the detriment of the jury and to the prejudice to defendant-Janssen.

### III. NONSUIT IS GRANTED TO COUNT II — UNJUST ENRICHMENT

Count II of the Commonwealth's first amended complaint is a claim for equitable relief in the nature of unjust enrichment. The plaintiff described the unjust enrichment action in its memorandum in opposition to nonsuit for unjust enrichment claim, June 11, 2010, at page 3:

"The Commonwealth's unjust enrichment claim is based on the following conduct and circumstances: (1) the Commonwealth's indirect conferral of benefits on Janssen by reimbursing Medicaid and PACE participants' Risperdal prescriptions, which resulted in increased Risperdal profits and market share, (2) Janssen's appreciation of those benefits through the increased Risperdal profits and market share, and (3) the inequity of permitting Janssen to retain those benefits without payment of value in light of Janssen's repeated false representations regarding Risperdal's safety and efficacy in comparison to other antipsychotics, which inflated and sustained Risperdal's price for 14 years, and the Janssen's false

representation of Risperdal's value in its pricing of the drug."

The Commonwealth alleges that Janssen has been unjustly enriched in an amount greater than $150,000,000—the value of the benefit conferred.

This court must concur with Janssen's position that well-settled Pennsylvania law precludes the availability of this equitable doctrine where, as here, "the relationship between the parties is founded on a written agreement or express contract." Janssen memorandum in support of nonsuit for unjust enrichment claim, June 11, 2010, pp. 9-10; *e.g., Curley v. Allstate Insurance Co.,* 289 F. Supp.2d 614, 620 (E.D. Pa. 2003) and numerous cases cited therein; *Wilson Area School District v. Skepton,* 586 Pa. 513, 895 A.2d 1250 (2006).

The Commonwealth did not address this issue prior to trial, during trial or in its nonsuit memorandum. With this in mind, Janssen's motion for nonsuit is granted as to Count II, for failure to present a claim for which relief may be granted.

## IV. CONCLUSION

For all of the reasons set forth above, Janssen's motion for nonsuit to Count I and Count II of the first amended complaint was granted on June 14, 2010. Nothing in this memorandum either explicitly or implicitly is meant to suggest that this trial court has reviewed or considered any of the additional grounds for nonsuit identified in Janssen's motions and memoranda in support of nonsuit filed on June 11, 2010.